UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE FIREMEN'S CHARITABLE & BENEVOLENT ASSOCIATION OF NEW ORLEANS | CIVIL ACTION |
| VERSUS | NO:  04-0017 |
| ORKIN, INC. F/N/A ORKIN EXTERMINATING COMPANY, INC. D/B/A/ ORKIN PEST CONTROL | SECTION: "S" (5) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Firemen's Charitable & Benevolent Association of New Orleans' motion for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure, is **DENIED**.  (Document #203.)

### I. BACKGROUND

Firemen's Charitable & Benevolent Association of New Orleans (Firemen's) and Orkin, Inc. (Orkin) proceeded to trial before a jury on March 20, 2006 on the issue of whether Orkin breached its lease agreement[1] by failing to comply with the 1988 lease amendment provision which required "all contamination resulting from the use of the premises will be removed under

---

[1]  The lease was entered into in 1962, and ended in 1997.

applicable laws of the City of New Orleans, State of Louisiana, and the United States of America."  The jury returned a verdict in favor of Orkin, finding that Orkin had not breached its lease obligation.  Firemen's moves to set aside the jury's verdict and for a new trial.

## II. DISCUSSION

Firemen's contends that the jury's verdict is against the weight of the evidence.  A new trial may be granted pursuant to Federal Rules of Civil Procedure 59(a) if, *inter alia*, the verdict is against the weight of the evidence.  See Whitehead v. Food Max of Mississippi, Inc., 163 F.3d 265, 269 (5th Cir. 1998).  The decision to grant or deny a new trial motion is within the sound discretion of the court.  Id.  "[O]n a motion for a new trial–unlike a motion for a judgment as a matter of law–the judge may set aside the verdict even though there is substantial evidence to support it."  11 WRIGHT, MILLER, AND KANE, Federal Practice & Procedure § 2806 at 65 (1995).  A new trial may be granted if, after "having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Id. at 75.  The court "weighs all the evidence, but need not view it in the light most favorable to the nonmoving party."  Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985).

Firemen's contends that three areas of the tract previously leased by Orkin continue to have chlordane and heptachlor concentrations and groundwater contamination[2] in excess of the

---

[2]   The jury was charged with two definitions of contamination requested by the parties: 1) a condition of impurity resulting from mixture or contact with foreign substance, and 2) the introduction into water, air, and soil of microorganisms, chemicals, toxic substances, wastes or wastewater in a concentration that makes the medium unfit for its next intended use.

least stringent RECAP[3] industrial screening criteria.[4]  Firemen's argues that the lease provision relating to removal of contamination requires that, upon a finding that applicable standards are exceeded, Orkin must remove all contamination.   Firemen's maintains that Orkin's failure to follow that procedure was a breach of the lease.

Orkin argues that the evidence showed their remediation efforts fulfilled their obligation under the lease to remove contamination, and that Firemen's failed to prove that cleanup of any remaining contamination was required under any applicable law.  Orkin suggests three theories the jury may have accepted in reaching their determination that there was no breach of the contract:  the jury could have accepted the testimony that Orkin was not the source of the contamination;[5]  it could have determined that there was no contamination because the property can be utilized for its next intended use; and it could have determined that Orkin's attempted remediation was adequate, and that Firemen's failed to prove that any further removal was necessary under the applicable regulations.

The jury heard evidence that, prior to the expiration of the lease, Orkin retained Malcolm

---

[3]   RECAP is Louisiana's Risk Evaluation and Corrective Action Program.

[4]   The parties do not dispute that "exceeding the screening standard" does not mean that the site is a risk to human health and the environment or that additional remediation is required. The term means that further evaluation is required under RECAP.  Firemen's argued at trial that RECAP residential, not industrial, screening criteria are applicable, but it does not urge that argument in this motion.  Orkin's expert, Mike Pizani, concurred in Firemen's assertion that the industrial level was exceeded.  See defendant's exh. 231 and plaintiff's exh. 94.

[5]   Orkin offered evidence at trial that contamination could have originated from a nursery located on the property, which used pesticides; a railroad embankment adjacent to the property, which could have been the source of various contaminants; and numerous homes and businesses in the area that were legally treated with chlordane and heptachlor.

Pirnie, Inc. (Malcolm Pirnie), an environmental consulting firm, to conduct an evaluation of the site in order to determine if any clean-up efforts would be necessary before Orkin ceased operations on the property.  Malcolm Pirnie found some positive levels of pesticides at various locations on the property and provided the Louisiana Department of Agriculture and Forestry (LDAF) a draft "Soil Characterization Report," indicating the precise locations and levels of pesticides that were in excess of current regulatory screening standards.  In October 1997, Malcolm Pirnie prepared a "Remedial Action Plan" for the LDAF.  When Orkin ceased activities on the leased property on December 31, 1997, it began remediation and cleanup of chemicals as required under the terms of the lease.  In October 1998, Malcolm Pirnie provided the LDAF with analytical data for the confirmation samples in the portion of the property that had been excavated and backfilled under procedures approved by LDAF.  In January 1999, Orkin completed the remediation and cleanup and obtained final approval of the LDAF.

In 2002, during negotiations with a new tenant, Orleans Parish Communications District (OPCD), Firemen's learned that Materials Management Group, Inc. (MMG), OPCD's consultant, found contamination at the site.  On October 28, 2002, Firemen's hired McCune Consultants, Inc. (McCune) as its own expert to conduct a soil investigation to determine whether any contamination existed on the property.  In March 2003, McCune provided Firemen's with laboratory results showing that Orkin had contaminated and failed to clean up the leased property, and that chemicals remained in quantities above Louisiana regulatory standards. McCune did not complete his investigation to identify whether further action was required or to identify the particular areas which needed further action.

In July 2003, the LDAF responded to a proposal by MMG and concluded that only two areas of the property had to be addressed in order to complete the RECAP process: an area behind the old bank building in the northeastern corner of the property and the area between the two Orkin buildings. Firemen's did not ask McCune to complete the necessary RECAP evaluation.

Orkin hired Dr. June Sutherlin, an expert environmental consultant and toxicologist, to complete a RECAP analysis to determine whether any of the applicable environmental laws required further removal of contamination. Dr. Sutherlin testified that the residual levels of chemicals at the site did not pose a risk to human health or the environment and that further removal of soils was not required or warranted.

In reaching a verdict that Orkin did not breach the lease provisions that required that "all contamination resulting from the use of the premises will be removed under applicable laws of the City of New Orleans, State of Louisiana, and the United States of America," the jury may have found that the residual toxins in the soil and groundwater are not "in a concentration that makes the medium unfit for its next intended use." Firemen's and the Orleans Parish Communications District (OPCD) have entered a 50 year lease with a 40 year option. A substantial building is under construction, which has been designed to cover up contamination and encapsulate residual chemicals. Although there was testimony that there may be future problems with tenants, the jury's finding that the site is not unfit for it next intended use is not against the weight of the evidence. Further, because Firemen's did not complete its RECAP assessment, it was unable to establish that further action was required.

In view of the evidence presented at trial, the court finds that the jury's verdict is not against the weight of the evidence. Accordingly, Firemen's motion for a new trial is denied.

New Orleans, Louisiana, this   26th day of July, 2006.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**